UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN DOE AND JANE DOE, on behalf of themselves and as Guardians ad Litem for their minor child, PRESCHOOLER,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF NEVADA; STATE OF NEVADA DEPARTMENT OF EDUCATION; JACK McLAUGHLIN, in his individual and official capacity; CLARK COUNTY BOARD OF EDUCATION; CLARK COUNTY SCHOOL DISTRICT, CARLOS ARTURO GARCIA, in his individual and official capacity; CHARLENE A. GREEN, in her individual and official capacity, MICHAEL S. HARLEY, in his individual and official capacity; KAY DAVIS, in her individual and official capacity; PEGGIE CRAVISH, in her individual and official capacity; DARRYL WYATT, in his individual and official capacity, KATHLEEN LISANTI, in her individual and official capacity; and DOES 1 to 10, Inclusive,<br><br>Defendants. | CV-S-03-1500-LRH (RJJ)<br><br>**O R D E R** |

Presently before the Court is an Emergency Motion to Enforce Stay Put Injunctive Relief and for Compensatory Education (Docket No. 109) filed by Plaintiffs John and Jane Doe

(collectively, "Plaintiffs"). An opposition (Docket No. 118) was filed by Defendants Clark County Board of Education and Clark County School District (collectively, "CCSD"). Plaintiffs have subsequently replied (Docket No. 128). A hearing was conducted on November 22, 2005. Upon considering the pleadings in this matter along with the evidence and arguments presented at oral argument, the Court makes the following disposition.

I. Factual Background

This is a proceeding to enforce the stay-put provision of the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j). The underlying action was brought by John and Jane Doe on behalf of their autistic child, Preschooler, as a result of alleged improper treatment of Preschooler by Defendants. During the pendency of the litigation, the parties have agreed to several individualized education programs ("IEPs") to meet the needs of Preschooler.

Preschooler is now six years old and ready to transition from preschool to kindergarten. As a result of this transition, a dispute has arisen concerning the proper educational placement of Preschooler. CCSD proposed an IEP for the 2005-2006 school year that provided thirty hours per week of in-home behavior programming and indicated that fifty percent of Preschooler's time will be spent in the regular classroom environment. The 2005-2006 IEP did not included a 1:1 instructional aide or provide for the home tutor to accompany Preschooler to class.

Plaintiffs disagreed with the proposed 2005-2006 IEP. Specifically, Plaintiffs object to the amount of time Preschooler will spend in the regular classroom environment, the alleged elimination of the 1:1 aide and the alleged elimination of the accompaniment of the home tutor to Preschooler's class. Unable to reach an agreement, Plaintiffs filed the present motion seeking a stay-put injunction to implement the "existing IEP."

II. Discussion

The IDEA was enacted, in part, "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services

2

1 designed to meet their unique needs and prepare them for further education, employment, and
2 independent living." 20 U.S.C. § 1400(d).  The IEP is the primary vehicle for implementing the
3 goals of the IDEA.  *Honig v. Doe*, 484 U.S. 305, 311 (1988).  The IEP, prepared at meetings
4 between the school district, teachers and parents, "sets out the child's present educational
5 performance, establishes annual and short-term objectives for improvements in that performance,
6 and describes the specially designed instruction and services that will enable the child to meet those
7 objectives." *Id*.

8       The stay-put provision of the IDEA provides that "during the pendency of any proceeding
9 conducted pursuant to this section, unless the State or local agency and the parents otherwise agree,
10 the child shall remain in the then-current educational placement of such child." 20 U.S.C. §
11 1415(j).  The stay-put provision demonstrates a congressional intent to "strip schools of the
12 *unilateral* authority they had traditionally employed to exclude disabled students . . . from school."
13 *Honig*, 484 U.S. at 323.  The Ninth Circuit has held that a child's then-current educational
14 placement is typically the placement provided for in the most recently implemented IEP.  *Johnson*
15 *ex rel. Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180 (9th Cir. 2002).  However,

> when a dispute arises under the IDEA involving a transfer student, and there is disagreement between the parent and student's new school district about the most appropriate educational placement, the new district will satisfy the IDEA if it implements the student's last agreed-upon IEP; but if it is not possible for the new district to implement in full the student's last agreed-upon IEP, the new district must adopt a plan that approximates the student's old IEP as closely as possible.

20 *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1134 (9th Cir. 2003).

21       As a preliminary matter, CCSD argues that this Court lacks jurisdiction to issue a stay-put
22 injunction due to Plaintiffs' failure to exhaust administrative remedies.  In response, Plaintiffs'
23 argue that they were not required to file for a due process hearing because the hearing officer would
24 lack the jurisdiction to adjudicate the issue of the stay-put provision.

25       Generally, a party must exhaust his administrative remedies under the IDEA before he can

3

1  bring a civil action. 20 U.S.C. § 1415(i)(2). However, it is unclear as to whether this requirement
2  applies to the stay-put provision as that provision was designed to preserve the status quo during
3  the pendency of proceedings conducted pursuant to section 1415. *See Murphy v. Arlington Cent.*
4  *Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (declining to decide whether the
5  exhaustion requirement is generally applicable to all claims arising under the IDEA.). Regardless
6  of whether exhaustion is normally required, the Court agrees with the Second Circuit's view that a
7  proceeding to enforce the stay-put provision falls within an exception to this jurisdictional
8  prerequisite. *Id*. As the Supreme Court stated in *Honig*, "parents may bypass the administrative
9  process where exhaustion would be futile or inadequate." 484 U.S. at 327. "The administrative
10 process is 'inadequate' to remedy violations of § 1415(j) because, given the time-sensitive nature of
11 the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the
12 claimed right.'" *Murphy*, 297 F.3d at 199 (quoting *Miss America Org. v. Mattel, Inc.*, 945 F.2d 536,
13 545 (2d Cir. 1991)). An administrative decision upholding a child's stay-put rights after the child
14 has been ejected from his current educational placement does not provide an adequate remedy for
15 that child. *Id*. at 199-200. Therefore, the Court has jurisdiction to decide the present issue.

16          Although the Court has jurisdiction to decide whether the stay-put provision has been
17 violated, the Court agrees with CCSD that Plaintiffs should have exhausted their administrative
18 remedies. An administrative record certainly would assist the Court in resolving the dispute. Had
19 Plaintiffs pursued their administrative remedies, they could have sought a stay-put injunction to be
20 in force through those proceedings and upon judicial review. The Court is of the view that
21 Plaintiffs' petition could be denied based upon their failure to pursue their administrative remedies.
22 However, due to the time it has taken for their petition to be presented to the Court, the Court will
23 decide the matter on the merits.

24          In deciding whether CCSD violated the stay-put provision, the Court must first determine
25 what educational placement was provided for in the last agreed-upon IEP. *See Vashon Island Sch.*
26

*Dist.*, 337 F.3d at 1134.  If the old IEP was enacted by the child's new school, the stay-put provision is not violated.  *Id.*  If the old IEP was not enacted, the Court must determine whether CCSD enacted the old IEP as closely as possible.  *Vashon Island Sch. Dist.*, 337 F.3d at 1134.  If the old IEP was enacted as closely as possible, the stay-put provision is not violated.  *See id.*

The dispute concerning the stay-put provision arose when it was time for Preschooler to transfer from preschool to kindergarten.  The parties agree that the last agreed-upon IEP was implemented on January 31, 2005.  However, a modification, reducing the amount of time spent in the regular classroom from 100% to 93%, was subsequently agreed upon by the parties.  Plaintiffs' object to the proposed IEP for the 2005-2006 school year on three principle grounds:  the proposed IEP does not provide for a 1:1 instructional aide; the proposed IEP does not provide for the home tutor to accompany Preschooler to class; and the proposed IEP reduces the amount of time spent in the regular classroom from 93% to 50%.

During oral argument, Plaintiffs conceded that the last agreed-upon IEP did not contain provisions for a 1:1 instructional aide or for the accompaniment of a home tutor.  Testimony during oral argument revealed that the 1:1 instructional aide was a teacher's assistant in the classroom that worked with all of the students and not just Preschooler.  Furthermore, the testimony revealed that Preschooler's new classroom would also have an educational aide.  With respect to the home tutor, the school permitted Plaintiffs to send their home tutor, at CCSD's expense, to accompany Preschooler to class due to the parents' concerns over the safety of Preschooler.  In addition, the testimony revealed that the home tutor may have been disruptive.  However, in light of the fact that these two educational aides were not contained in the last agreed-upon IEP, *Vashon Island Sch. Dist* does not require that the kindergarten provide these aides in order to comply with the stay-put provision of the IDEA.

Furthermore, a decision requiring CCSD to continue to provide services that were not contained in the IEP would discourage school districts from providing additional services to a

5

disabled child to accommodate a parent's request. Such a decision would indicate that any time a school district chose to allow additional services at the request of a parent, the school district may be required to provide those same services throughout the resolution of the underlying dispute. A better approach is to encourage parents and the school district to continually revise a child's IEP as he progresses through the school system.

In addition to the 1:1 aide and the accompaniment of the home tutor, Plaintiffs disagree with the decrease in the amount of time Preschooler would spend in the regular classroom environment. It is clear that the proposed IEP decreases the amount of time spent in the general education environment from 93% to 50%. However, if the old IEP was enacted as closely as possible, the stay-put provision is not violated. *Vashon Island Sch. Dist.*, 337 F.3d at 1134. The proposed IEP explains this change as follows:

> [Preschooler] will participate in the special education classroom for teaching/pre-teaching and enhancement of prerequisite skills for 50% of his school day. Specialized instruction in the areas of Fine Motor, Gross Motor, Self Help, Social/Emotional, Language and Cognitive skills are required in a small setting in order to effectively teach these skills so that [Preschooler] can be provided the opportunity to generalize these learned skills in the general education environment and aligned with the general education curriculum. [Preschooler] will spend 50% of his time in the general education classroom with appropriate special education support. The IEP team has determined that this combination of support and peer interaction as presented in the general education environment will best facilitate [Preschooler's] education and social development.

(June 7, 2005, IEP at 23.)

The Court finds that CCSD, in decreasing the amount of time Preschooler would spend in the general education environment, implemented the last agreed-upon IEP as closely as possible. It is undisputed that Preschooler's placement in the preschool program is no longer available as the child is ready to move on to kindergarten. In facilitating this move, CCSD has determined that Preschooler requires more time in the special education classroom in order to develop better skills necessary to spend the remainder of his time in the general education classroom. The Court is not in a position to say that CCSD's determination is erroneous and Plaintiffs have not provided any

evidence indicating that Preschooler could effectively spend more time in the general education classroom.

As mentioned previously, the stay-put provision was enacted to prevent schools from unilaterally excluding disabled students from class. *Honig*, 484 U.S. at 323. In this case, Preschooler's educational environment is being changed due to Preschooler's successful completion of his preschool program. This is not a case where the school district is trying to exclude a disabled child from the classroom. To the contrary, both CCSD and the Plaintiffs appear to be acting in good faith in attempting to provide an appropriate education for this child. It would be inappropriate to freeze a disabled child within the mandates of his preschool IEP when his disability may make such a placement impractical as he ages and progresses through higher levels of public education. Therefore, the Court finds that CCSD has enacted Preschooler's last agreed-upon IEP as closely as possible given the educational needs of Preschooler and his new educational environment. For this reason, CCSD has not violated the stay-put provision of the IEP. *See Vashon Island Sch. Dist.*, 337 F.3d at 1134.

### III. Conclusion

For the reasons discussed above, the Court finds that issuing a stay-put injunction is not appropriate in this case.

IT IS THEREFORE ORDERED that Plaintiffs' Emergency Motion to Enforce Stay Put Injunctive Relief and for Compensatory Education (Docket No. 109) is hereby DENIED.

IT IS SO ORDERED.

DATED this 6th day of December, 2005.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE