1

2

3

4

5

6                   UNITED STATES DISTRICT COURT

7                        DISTRICT OF NEVADA

8                               * * *

9   JOHN DOE AND JANE DOE, on behalf of      )
    themselves and as Guardians ad Litem for  )
10  their minor child, PRESCHOOLER,           )        02:03-CV-01500-LRH-RJJ
                                              )
11                Plaintiffs,                 )
                                              )
12  v.                                        )        ORDER
                                              )
13  THE STATE OF NEVADA; STATE OF             )
    NEVADA DEPARTMENT OF                      )
14  EDUCATION; JACK McLAUGHLIN, in his        )
    individual and official capacity; CLARK   )
15  COUNTY BOARD OF EDUCATION;                )
    CLARK COUNTY SCHOOL DISTRICT,             )
16  CARLOS ARTURO GARCIA, in his              )
    individual and official capacity; CHARLENE )
17  A. GREEN, in her individual and official   )
    capacity, MICHAEL S. HARLEY, in his       )
18  individual and official capacity; KAY DAVIS, )
    in her individual and official capacity;   )
19  PEGGIE CRAVISH, in her individual and     )
    official capacity; DARRYL WYATT, in his    )
20  individual and official capacity, KATHLEEN )
    LISANTI, in her individual and official    )
21  capacity; and DOES 1 to 10, Inclusive,    )
                                              )
22                Defendants.                 )
                                              )
23  _____)

24

25

26

1       Presently before the court are several motions.  First, four Motions for Summary Judgment

2  (#s 161, 166, 167, 168[1] ) have been filed by defendants Clark County Board of Education (the

3  "Board"), Clark County School District ("CCSD"), Carlos Arturo Garcia ("Garcia"), Charlene A.

4  Green ("Green"), Michael S. Harley, Kay Davis, Peggie Cravish ("Cravish"), Darryl Wyatt

5  ("Wyatt"), and Kathleen LiSanti ("LiSanti") (collectively, "Defendants").  Plaintiffs John and Jane

6  Doe (collectively, "Plaintiffs") have filed oppositions (# 179, 180, 182, 184, 188, 189, 190), and

7  Defendants have replied (# 193, 194, 199, 200).

8       Second, Defendants have filed a Motion for Judgment on the Record on Plaintiffs' First

9  Claim for Relief (# 163).  Plaintiffs have filed an opposition (# 187), and defendants replied (#

10  196).   Defendants Cravish and LiSanti have filed a Motion to Partially Dismiss Plaintiffs' Fifth

11  Cause of Action (# 165).  Plaintiffs have filed an opposition (# 177), and Cravish and LiSanti have

12  replied (# 197).

13       Also before the court are several Motions in Limine (#s 159, 160, 162, 164) filed by

14  defendants the Board, CCSD, Garcia, Green, Michael Harley, Kay Davis, Cravish, Wyatt, and

15  LiSanti (collectively, "Defendants").  Plaintiffs John and Jane Doe (collectively, "Plaintiffs") have

16  filed oppositions (# 176, 178, 185, 186), and Defendants have replied (# 191, 192, 195, 201).

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23

24

---

25       [1]Refers to the court's docket number.

26

**I.  Factual Background**[2]

This action was brought by Plaintiffs on behalf of themselves and their minor child, Preschooler, as a result of alleged improper treatment of Preschooler by Defendants.  Preschooler was diagnosed with autism on April 20, 2002.  During the time period relevant to this litigation, Preschooler was three-and-a-half to four years of age and attended Betsy Rhodes Elementary School ("Betsy Rhodes"), located in Las Vegas, Nevada, during the 2002-2003 school year.  Preschooler was enrolled in the Kids Intensive Delivery of Services ("KIDS") program.  The KIDS program is a full-day program for autistic children between the ages of three and five.  Plaintiffs allege that Preschooler experienced behavioral and emotional regression after his enrollment in the KIDS program.

According to Plaintiffs, Preschooler was assaulted by Defendants on at least three separate occasions.  First, on September 27, 2002, defendant Cravish, a Special Education Teacher's Aide, "grabbed Plaintiff Preschooler by the right arm in a twisting fashion with sufficient force to cause bodily injury and threw him two and a half (2 ½) feet."  (Am. Compl. ¶ 81.)  Plaintiffs allege that defendants State of Nevada, Garcia, and Wyatt were informed of the incident on September 30, 2002.

The second alleged assault occurred in October or November of 2002.  On the date of the assault, LiSanti, a teacher for the KIDS program, was allegedly observed "screaming" at the children in Preschooler's classroom in an "aggressive and alarming manner."  (Am. Compl. ¶ 86.)  Finally, Plaintiffs allege that in the last week of March, 2003, LiSanti assaulted and battered

---

[2]The following factual summary is taken primarily from Plaintiffs' Amended Complaint due to the fact that the parties failed to cite to the record to support many of the factual statements contained in the various motions.  The court directs the parties to Rule 56-1 of the Local Rules of Practice for the United States District Court, District of Nevada.  Local Rule 56-1 provides, "[m]otions for summary judgment and responses thereto shall include a concise statement setting forth each fact material to the disposition of the motion which the party claims is or is not genuinely in issue, *citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.*"  LR 56-1 (Emphasis added).

1  "Plaintiff Preschooler by grabbing both wrists, and violently and forcefully causing him to

2  repeatedly strike himself about the face and head approximately ten (10) to twelve (12) times."

3  (Am. Compl. ¶ 100.)

4          In addition to the alleged assaults, Plaintiffs assert that Defendants failed to properly

5  implement an appropriate educational program for Preschooler.  On April 7, 2003, Plaintiffs allege

6  that they withdrew Preschooler from Betsy Rhodes based on concerns that LiSanti created a hostile

7  environment where Preschooler would be subject to further emotional and physical harm.

8          On or about April 7, 2003, Plaintiffs also requested an impartial due process hearing to

9  address their concerns regarding Preschooler's educational placement and the prevention of

10  aversive interventions.[3]  Plaintiffs also requested reimbursement for the expenses incurred in

11

12          [3]Section 388.5215 of the Nevada Revised Statutes defines "aversive intervention" as:

13  Any of the following actions if the action is used to punish a pupil with a disability or to eliminate, reduce or
   discourage maladaptive behavior or a pupil with a disability:

14  1.  The use of noxious odors and tastes;

15  2.  The use of water and other mists or sprays;
   3.  The use of blasts of air;

16  4.  The use of corporal punishment;
   5.  The use of verbal and mental abuse;

17  6.  The use of electric shock;
   7.  The administration of chemical restraint to a person;

18  8.  The placement of a person alone in a room where release from the room is prohibited by a mechanism,
   including, without limitation, a lock, device or object positioned to hold the door closed or otherwise prevent

19  the person from leaving the room;
   9.  Requiring a person to perform exercise under forced conditions if the:

20          (a)  Person is required to perform exercise because he exhibited a behavior that is related to his
   disability;

21          (b)  Exercise is harmful to the health of the person because of his disability; or
           (c)  Nature of the person's disability prevents him from engaging in the exercise; or

22  10.  The deprivation of necessities needed to sustain the health of a person, regardless of the length of the
   deprivation, including, without limitation, the denial or unreasonable delay in the provision of:

23          (a)  Food or liquid at a time when it is customarily served; or
           (b)  Medication.

24

25  Nev. Rev. Stat. § 388.5215

26

4

Preschooler's private placement as a result of the alleged failure to provide Preschooler with a free and appropriate public education.

## II. Summary Judgment

### A. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must show that "no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 737 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A

5

1  dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

2  jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere

3  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to

4  establish a genuine dispute; there must be evidence on which the jury could reasonably find for the

5  plaintiff.  *See id.* at 252.

6  **B. Discussion**

7       As a result of the events described above, Plaintiffs filed this action seeking judicial review,

8  declaratory, and equitable relief regarding the actions of defendants as they relate to Preschooler's

9  free appropriate public education along with asserting the following causes of action: violation of

10  the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"); violation of 42

11  U.S.C. § 1983; Supervisory Liability; Assault, Battery, and use of Aversive Interventions;

12  Negligence; and for violations of Nevada's Aversive Intervention Laws, Nev. Rev. Stat. § 388.521

13  et. seq., and Child Abuse Laws, Nev. Rev. Stat. § 432B.010 et. seq.

14  **1. Plaintiffs Fifth and Sixth Claims for Relief**

15       Plaintiffs' Fifth and Sixth claims for relief allege state law causes of action for assault,

16  battery, use of aversive interventions, and negligence.  Defendants CCSD, Cravish, and LiSanti

17  seek summary judgment arguing that these causes of action are barred by state law immunity.

18  Specifically, CCSD, Cravish, and LiSanti argue that their acts in disciplining Preschooler were

19  discretionary acts that cannot form the basis of a lawsuit in Nevada.  Plaintiffs oppose summary

20  judgment arguing that Cravish and LiSanti were negligent in the operational phase of their

21  discretionary decision to intervene in Preschooler's behavior.

22       Section 41.032(2) of the Nevada Revised Statutes provides as follows:

23  no action may be brought under NRS 41.031 or against an immune contractor or an
   officer or employee of the State or any of its agencies or political subdivisions which

24  is: [b]ased upon the exercise or performance or the failure to exercise or perform a
   discretionary function or duty on the part of the State or any of its agencies or

25  political subdivisions or of any officer, employee or immune contractor or any of
   these, whether or not the discretion involved is abused.

26

Nev. Rev. Stat. § 41.032(2).  "Discretionary acts are those which require the exercise of personal deliberation, decision and judgment." *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354 (Nev. 1987) (citing *Parker v. Mineral County*, 729 P.2d 491, 493 (Nev. 1986)).  An action can be brought under section 41.032, however, if the acts in question are merely "'ministerial,' amounting only to obedience to orders, or the performance of a duty in which the officer is left no choice of his own." *Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932, 934 (Nev. 1994).  Although a given act is discretionary, "negligence in the operational phase of a decision would subject the State, its agencies, and employees to liability." *Hagblom v. State Dir. of Motor Vehicles*, 571 P.2d 1172, 1175 (Nev. 1977).

In the case sub judice, the court must determine whether Cravish and LiSanti's actions toward Preschooler were discretionary acts.  The parties agree that the September 27, 2002, incident occurred following a dispute between Preschooler and another child that may have resulted in Preschooler scratching the other child.  As a result of this dispute, Cravish allegedly grabbed preschooler by the arm and threw him onto a mat.  The second incident occurred in March of 2003.  On the date of the incident, LiSanti allegedly observed Preschooler engaged in "self-stimulatory behavior."[4]  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Fifth, Sixth, and Seventh Claim of Relief (# 179) at 5.)  Upon observing this behavior, LiSanti allegedly forced Preschooler to slap himself in the head ten to twelve times.

Viewing the evidence in the light most favorable to Plaintiffs, the court finds that the alleged acts by LiSanti and Cravish, were discretionary acts.  There is no evidence in the record indicating that the actions of Cravish and LiSanti amounted only to the obedience of orders.  Moreover, the decision of a teacher and a Special Education Teacher's Aide to intervene in the

---

[4]Defendants describe the "self-stimulatory behavior," without accurate citation to properly authenticated evidence, as hitting himself in the head. *See* (Defs.' Mot. for Sum. J. on Pls.' Fifth and Sixth Claims for Relief (# 161) at 3.)

behavior of students and discipline those students inherently involves the exercise of personal

deliberation, decision and judgment.  *See Travelers Hotel, Ltd.*, 741 P.2d at 1354; *Nicole M. by and*

*through Jacqueline M. v. Martinez Unified Sch.*, 964 F.Supp. 1369 (N.D. Cal. 1997) ("Decisions by

a school principal or superintendent to impose discipline on students and conduct investigations of

complaints necessarily require the exercise of judgment or choice, and accordingly are

discretionary, rather than ministerial, acts."); *Foley v. Taylor*, 695 So.2d 1196, 1199 (Ala. Civ.

App. 1997) ("[W]ell-settled Alabama law provides that supervision of students is a discretionary

act."); *Kelly v. Lewis*, 471 S.E.2d 583, 586 (Ga. Ct. App. 1996) ("[M]aking decisions requiring the

means used to supervise school children is a discretionary function of a school principal, and . . .

[a] teachers' task to monitor, supervise, and control students is a discretionary action protected by

the doctrine of official immunity.") (footnote and internal quotations omitted).

Moreover, the obscure analytical distinction between discretionary acts and operational

functions is inapplicable here.  "When the state qualifiedly waived its immunity from liability and

consented to civil actions, it did so to provide relief for persons injured through negligence in

performing or failing to perform non-discretionary operational actions."  *Hagblom*, 571 P.2d at

1176.  Here, there is no evidence that the decisions made by LiSanti and Cravish were anything

more than discretionary decisions as to how to handle a particular classroom occurrence.  Although

the court is sympathetic to Plaintiffs' claims, the State has unequivocally retained immunity for

discretionary acts.  Nev. Rev. Stat. § 41.032(2).  As such, summary judgment will be granted.

### 2.  Negligent Failure to Report, Disclose and Remediate

Plaintiffs' Seventh Cause of Action alleges negligence in failing to report the alleged

assaults and batteries against Preschooler.  In seeking summary judgment, Defendants argue that

the claim fails because this court has already held that the reporting statutes, sections 388.521 and

432B.010 of the Nevada Revised Statutes, do not create private rights of action.  Alternatively,

Defendants argue that Plaintiffs cannot show negligence as a matter of law.  In opposition,

Plaintiffs argue that a claim for negligence under the reporting statutes is valid and that there is a factual dispute regarding each element of the cause of action.

Defendants are correct that this court has previously held that sections 388.521 and 432B.010 of the Nevada Revised Statutes do not create a private right of action. *Doe v. Nevada*, 356 F.Supp.2d 1123, 1125-26 (D. Nev. 2004). However, the court has not addressed whether these statutes can serve as a duty standard for purposes of a negligence claim. In *Doe v. Green*, a case involving the sexual molestation of a student, this court denied granting summary judgment in favor of the defendant on a negligence claim that borrowed the duty standard from section 432B.100 of the Nevada Revised Statutes. 298 F.Supp.2d 1025, 1038 (D. Nev. 2004). However, in that case, the court did not hold that such a claim is viable. *See id.* In fact, the court did not address the viability of such a claim in *Green* because the parties involved in that case assumed that the claim was viable. *Doe v. Nevada*, 356 F.Supp.2d 1123, 1126 n.2 (D. Nev. 2004). Moreover, this court has explicitly stated that "[t]he reporting statutes advanced in Plaintiff's amended complaint do not in themselves create a private right of action; however, they may be relevant to a negligence action brought against the Defendants." *Id*. at 1125-26. For this reason, the court previously allowed Plaintiffs to amend their complaint to assert a negligence cause of action. *Id*. at 1126.

In Nevada, a cause of action for negligence consists of five elements: (1) duty; (2) breach; (3) actual causation; (4) proximate causation; and (5) damages. *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 590-91 (Nev. 1991). In some circumstances, the violation of a statute can establish the elements of breach and duty. *Anderson v. Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997) (citing *Ashwood v. Clark County*, 930 P.2d 740, 744 (Nev. 1997)). To determine whether a statute can serve as a duty standard, the court must determine whether the injured party belongs to the class of persons that the statute was intended to protect and whether the injury is of the type against which the statute was intended to protect. *Id*.

9

Here, it appears that Plaintiffs are attempting to borrow sections 388.5259 and 432B.220 of the Nevada Revised statutes to establish a duty on the part of Defendants to report certain conduct. Section 388.5265 of the Nevada Revised Statutes provides that "[a] person employed by the board of trustees of a school district or any other person shall not use any aversive intervention on a pupil with a disability." Nev. Rev. Stat. § 388.5265. Section 388.5215 defines "aversive intervention" to include, among other things, the use of corporal punishment. Nev. Rev. Stat. § 388.5215. Corporal punishment is defined in section 388.5225 as "the intentional infliction of physical pain, including, without limitation, hitting, pinching or striking." Nev. Rev. Stat. § 388.5225. Chapter 388 of the Nevada Revised Statutes contains a reporting requirement for such violations. Section 388.5259 requires "[a] school where a violation of NRS 388.521 to 388.5315, inclusive, occurs [to] report the violation to the board of trustees of the school district not later than 24 hours after the violation occurred, or as soon thereafter as the violation is discovered." Nev. Rev. Stat. § 388.5295.

Chapter 432B of the Nevada Revised Statutes is titled Protection of Children from Abuse and Neglect. Nev. Rev. Stat. § 432B. Section 432B.020 defines "abuse or neglect of a child" to include, among other things, a "[p]hysical or mental injury of a nonaccidental nature." Nev. Rev. Stat. § 432B.020(1)(a). Section 432B.220, like section 388.5259, requires the reporting of the abuse or neglect of a child. Nev. Rev. Stat. § 432B.220.

The plain and unambiguous language of sections 432B.220 and 388.5259, along with the underlying statutory schemes, indicates that these sections are designed to protect children from abuse and neglect by reporting instances of such conduct. *See* Nev. Rev. Stat. §§ 388.5259, 432B.220. In this case, Plaintiffs are alleging that the failure to report the mistreatment of Preschooler led to further abuse of the autistic child. Therefore, the court finds that Preschooler belongs to the class of persons that the reporting statutes were intended to protect and that the alleged injury to Preschooler is of the type against which the reporting statutes were intended to protect. For these reasons, a violation of the reporting statutes can establish the first two elements

10

1   of a negligence claim, duty and breach.

2          Because a claim for negligence under the reporting statutes is a viable cause of action, the

3   court must determine whether there is a genuine issue of material fact with regard to each element

4   of the cause of action. *Sims v. General Tel. & Elec.*, 815 P.2d 151 (Nev. 1991) (citing *Perez*, 805

5   P.2d at 590-91.) With respect to the elements of duty and breach, Defendants have conceded that

6   there is an issue of fact as to whether the reporting statutes were violated. (Defs.' Mot. for Summ.

7   J. on Pls.' Seventh Claim for Relief (# 167) at 5.) However, Defendants argue that "Plaintiffs

8   cannot establish that any injuries were actually or legally caused by a failure to report the alleged

9   assaults." *Id*. (emphasis omitted).

10          To show causation, Plaintiffs must show that the conduct of Defendants was both the actual

11   cause and the proximate cause of the alleged injury. *Goodrich v. Pennington Mortg. Fund, Inc. v.*

12   *J.R. Woolard, Inc.*, 101 P.3d 792, 797 (Nev. 2004). Actual causation is demonstrated when the

13   plaintiff shows that, but for the defendant's conduct, the injury would not have occurred. *Id*. "The

14   second component, proximate cause, is essentially a policy consideration that limits a defendant's

15   liability to foreseeable consequences that have a reasonably close connection with both the

16   defendant's conduct and the harm which that conduct created." *Id*. (citing *Dow Chem. Co. v.*

17   *Mahlumi*, 970 P.2d 98 (Nev. 1998)). Proximate cause is more specifically defined as "'any cause

18   which in natural [foreseeable] and continuous sequence, unbroken by any efficient intervening

19   cause, produces the injury complained of and without which the results would not have occurred.'"

20   *Id.* (quoting *Taylor v. Silva*, 615 P.2d 970, 971 (Nev. 1980)).

21          In the case at bar, Defendants argue that a failure to report an assault cannot cause that

22   assault. Defendants further argue that any failure to report the alleged assault in September 2002

23   by Ms. Cravish could not have caused the alleged assault in spring of 2003 by Ms. LiSanti because

24   "the assaults were different in nature, and were perpetrated by different persons." (Defs.' Mot. for

25   Summ. J. on Pls.' Seventh Claim for Relief (# 167) at 6.)

26

1    The court agrees with Defendants' logic.  The evidence produced by Defendants indicates

2  that the alleged corporal punishment that occurred in September 2002 is unrelated to the incident

3  that occurred in the spring of 2003.  The two incidents involve two different teachers that chose to

4  employ different methods in disciplining Preschooler.  Even if the Defendants had properly

5  reported the alleged Cravish assault, there is no evidence or indication that this would have

6  prevented LiSanti from perpetrating the alleged assault in 2003.  In order to show that a failure to

7  report under the reporting statutes was the actual or proximate cause of the alleged injury, Plaintiffs

8  would have to show that each named individual failed to report a similar incident to those alleged

9  in the complaint and that such a report likely would have prevented the future occurrence.  For

10  these reasons the court finds that Defendants have met their initial burden of showing that there is

11  no genuine issue of material fact as to whether the failure to report was the actual cause of

12  Preschooler's alleged injuries.  Therefore, in order to rebut Defendants' motion for summary

13  judgment, Plaintiffs must point to facts supported by the record which demonstrate a genuine issue

14  of material fact.  *Reese*, 208 F.3d at 737.

15    In an attempt to rebut the motion, Plaintiffs assert that "Defendants had implied notice prior

16  to September 27, 2002, and had actual notice of Preschooler being subjected to corporal

17  punishment on September 27, 2002 (only a few days after his enrollment on September 22, 2002)

18  but negligently failed to report, disclose and/or remediate . . . ."  (Pls.' Opp'n to Defs.' Mot. for

19  Summ. J. as to Pls.' Seventh Claim of Relief (# 182) at 3.)   In other words, Plaintiffs argue that the

20  failure to report the alleged abusive conduct caused further abuse because such abuse would have

21  been eliminated if Defendants had complied with the reporting statutes.  Plaintiffs further argue that

22  Defendants created a "system of unreasonable conduct" that "comprised of the delegation of duties

23  without reasonable methods and strategies to ensure accountability to known risks and violations of

24  Preschooler's federally protected rights."  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.'

25  Seventh Claim of Relief (# 189) at 9.)

26

12

1   The court has examined the record and finds that Plaintiffs have failed to establish a

2   genuine issue of material fact as to whether the failure to report actually caused the alleged injuries

3   in this case.  As evidence of prior abuse similar to the September 27, 2002, and March 2003,

4   incidents, Plaintiffs point to the deposition testimony of substitute teacher Limbert and art teacher

5   Patricia Been ("Been").

6   During his deposition, Limbert testified that he saw Cravish, in anger, lift Preschooler by

7   the arm on more than one occasion.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Seventh

8   Claim of Relief (# 189), Dep. of Stuart Limbert, Ex. 5 at 18:23-21:24.)  With respect to Been, her

9   deposition testimony indicates that she reported to someone on the "Low Incident Team"[5] that she

10  witnessed LiSanti speaking to the children and reprimanding them.  (Pls.' Opp'n to Defs.' Mot. for

11  Summ. J. as to Pls.' Seventh Claim of Relief (# 189), Dep. of Patricia Been, Ex. 6 at 36:6-11.)

12  Other than this testimony, Plaintiffs have not provided any other evidence indicating possible

13  improper treatment of Preschooler before the September 27, 2002, incident.  Even assuming the

14  incidents described by Stuart and Been would trigger the reporting requirement, such conduct does

15  not establish that the named defendants caused the injury to preschooler by failing to report under

16  the reporting statutes.  In the absence of evidence that any named defendant failed to report any

17  improper treatment of Preschooler, the court cannot say that any such failure to report was the

18  actual cause of any alleged injury to Preschooler.  In other words, the fact Limbert and Been may

19  have failed to file reports under the reporting statutes does not show that any of the named

20  Defendants caused the alleged injury to Preschooler.  Because Plaintiffs have failed to create a

21  genuine issue of material fact as to whether the failure to report the abuse of Preschooler actually

22  caused Preschooler to suffer additional injuries, summary judgment will be granted.

23   **3.  Compensatory Damages Pursuant to the ADA and the RA**

24   Plaintiffs' second cause of action alleges that defendants CCSD and the Board violated the

25

26   [5]The function of the "Low Incident Team" is unclear to the court.

13

1    ADA, 42 U.S.C. § 12132, and the RA, 29 U.S.C. § 794.[6]  In seeking summary judgment,

2    Defendants argue that compensatory damages are not available because Plaintiffs cannot prove that

3    Defendants acted with deliberate indifference.  Specifically, Defendants argue that the testimony of

4    CCSD employees "establishes that CCSD takes deliberate action to avoid the deprivation of

5    federally protected rights and abuse by offering substantial training to its personnel relating not

6    only to the actual instruction proffered in the classroom, but also with regard to procedural

7    requirements and student rights."  (Defs.' Mot. for Summ. J. as to Pls.' Entitlement of

8    Compensatory Damages (# 168) at 7.)  In opposition, Plaintiffs argue that CCSD and the Board had

9    knowledge that a harm to Preschooler's federally protected rights was substantially likely and that

10   they failed to act to protect Preschooler's rights.

11          The ADA and RA both prohibit discrimination on the basis of disability.  However, "[t]he

12   ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-

13   funded programs."  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II of the ADA

14   provides, in pertinent part, "no qualified individual with a disability shall, by reason of such

15   disability, be excluded from participation in or be denied the benefits of the services, programs or

16   activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §

17   12132.  Title II was modeled after Section 504 of the RA.  29 U.S.C. § 794; *Weinreich v. Los*

18   *Angeles County Metro. Transp. Auth.*, 114 F.3d 976 (9th Cir. 1997).  Section 504 of the RA

19   provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United

20   States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be

21   denied the benefits of, or be subjected to discrimination under any program or activity receiving

22   Federal financial assistance . . . ."  29 U.S.C. § 794(a).

23          "To establish a violation of Title II of the ADA, a plaintiff must show that (1) she is a

24

25          [6]Plaintiffs have conceded that claims under the ADA and the RA cannot be brought against individual
26   defendants.  (December 167, 2004, Order (# 79) at 6 n.3.)

14

qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of her disability." *Lovell*, 303 F.3d at 1052 (citing *Weinreich*, 114 F.3d at 978).  "To establish a violation of § 504 of the RA, a plaintiff must show that (1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Id*.

The remedies available for violations of Title II of the ADA are the same as those available under section 504 of the RA.  42 U.S.C. § 12133; *Lovell*, 303 F.3d at 1056.  Under both statutes, compensatory damages are not available absent a showing of discriminatory intent.  *Id*. (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)).  In *Duvall v. County of Kitsap*, the Ninth Circuit determined that the deliberate indifference standard is the appropriate test for determining whether there is intentional discrimination.  260 F.3d 1124, 1138 (9th Cir. 2001).  "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  *Id*. (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).  A plaintiff satisfies the first element of the deliberate indifference test by showing that the public entity is on notice that an accommodation is required.  *Id*. at 1139.  "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness."  *Id*. (citing *Bartlett v. New York State Bd. of Law Examiners*, 156F.3d 321, 331 (2d Cir. 1998)).

In this case, CCSD and the Board have provided evidence indicating that substantial steps are taken to avoid the deprivation of federally-protected rights by offering training to its personnel on classroom instruction and procedural requirements.  *See, e.g.*, (Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 168), Dep. of Charlene Green, Ex. 3 at 53:21-25.)

1    Specifically, Kay Davis, Special Education Administrative Specialist for CCSD, testified that the

2    compliance and monitoring office conducts ongoing training on positive behavior intervention to

3    teachers in the KIDS program.  (Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory

4    Damages (# 168), Dep. of Kay Davis, Ex. 1 at 57:19-58:9.)  The evidence also indicates that Daryl

5    Wyatt, Principal of Betsy Rhodes, Cravish, and LiSanti received training regarding children with

6    autism.  (Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 168), Dep.

7    of Darryl Wyatt, Ex. 2 at 71:3-19, 144:19-24.); (Defs.' Mot. for Summ. J. as to Pls.' Entitlement of

8    Compensatory Damages (# 168), Dep. of Kathleen LiSanti, Ex. 5 at 15:9-21, 16:17-12, 26:15-24,

9    32:13-17, 123:9-13, 135.)

10        The testimony of Harley, Compliance Officer for CCSD, indicates that teachers are trained

11    and possibly removed from the classroom when an aversive intervention is found.  (Defs.' Mot. for

12    Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 168), Dep. of Michael Harley, Ex. 4

13    at 149:17-25, 154:18-23.)  Harley further testified that he advises staff to report child abuse when it

14    is brought to his attention.  *Id*. at 14:12-17.  The affidavit of Scott Reynolds, Executive Director of

15    Special Education Support Services for CCSD, testified that CCSD "requires its administrators,

16    teachers, teacher's aides and other support personnel to participate in training programs offered by

17    CCSD . . . ."  (Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 168),

18    Aff. of Scott G. Reynolds, Ex. 7.)  This training included training on the best practices for teaching

19    disabled students and compliance with federal and state laws governing the rights of students with

20    disabilities.  *Id*.

21        In light of the above evidence, and the assertion that the Plaintiffs do not have evidence of

22    deliberate indifference, the court finds that CCSD and the Board have met their initial burden of

23    showing that there is no genuine issue of material fact as to whether they acted with deliberate

24    indifference.  CCSD and the Board have indicated that they had no knowledge that Preschooler's

25    rights pursuant to the ADA and the RA would be violated in light of the training provided to

26

1    personnel.  Therefore, the burden shifts to Plaintiffs to point to facts supported by the record that

2    demonstrate a genuine issue of material fact.  *Reese*, 208 F.3d at 737.

3         To rebut the motion for summary judgment, Plaintiffs point to evidence purportedly

4    showing that:

5         CCSD Superintendent, Carlos Garcia; Assistant Superintendent, Charlene Green;
          Michael Harley, CCSD Compliance & Monitoring; Kay Davis, Special Education
6         Administrative Specialist; and Darryl Wyatt, Principal/Site Administrator created a
          system of unreasonable conduct that was likely to result in the violation of federally
7         protected rights and further failed to act upon that knowledge in deliberate
          indifference to Preschooler.

8

9    (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190)

10   at 13.)  The court has examined the evidence presented by Plaintiffs and finds that it fails to

11   establish a genuine issue of material fact as to whether CCSD or the Board acted with deliberate

12   indifference with respect to the alleged violations of the ADA and the RA.

13        To support their argument, Plaintiffs first point to the deposition of CCSD Superintendent

14   Garcia.  Garcia acknowledged that his responsibility included making sure that aversive

15   interventions were properly investigated.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.'

16   Entitlement of Compensatory Damages (# 190), Dep. of Carlos Garcia, Ex. 1 at 35:7-13.)

17   According to Plaintiffs, Garcia's testimony further indicates that he acknowledged that he had

18   actual knowledge of the September, 2002, incident and that he abdicated responsibility of ensuring

19   corrective action without follow up.  However, Garcia's actual deposition testimony indicates that

20   he "vaguely" recalled the September, 2002, incident.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as

21   to Pls.' Entitlement of Compensatory Damages (# 190), Dep. of Carlos Garcia, Ex. 1 at 28:11-20.)

22   Garcia did remember a parent coming in with a child to talk about something similar to the

23   September, 2002, incident.  *Id*. at 29:1-5.  Furthermore, Garcia stated that he remembered asking

24   his staff to look into the matter but that he could not remember if he received a report from his staff

25   regarding the matter.  *Id*.  at 29:3-8.  Therefore, this evidence merely establishes that Garcia asked

26
                                                    17

his staff to look into the September, 2002, incident.  There is no indication that Garcia knew that it was likely Preschooler's rights would be violated or that he failed to act.

Plaintiffs next point to the deposition testimony of CCSD Police Officer James Barron. According to Plaintiffs, Officer Barron failed to interview the reporting parent witnesses, the other adults in the classroom and Preschooler's parents.  However, the actual testimony of Officer Barron indicates that he did not recall Preschooler's case.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190), Dep. of James Baron, Ex. 2 at 28:11-20.) Plaintiffs are, however, correct that Limbert witnessed Cravish lift Preschooler by the arm.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190), Dep. of Stuart Limbert, Ex. 3 at 19:3-7.)  Nevertheless, Limbert further testified that he did not report such conduct.  *Id*. at 20:9-25.  Taken together, this evidence fails to establish that either CCSD or the Board had knowledge that a harm to a federally protected right was substantially likely.

Plaintiffs argue that the testimony of Associate Superintendent Green shows that she had actual notice of the alleged abuse in September, 2002.  Plaintiffs further argue that "Green's nonchalant attitude towards abuse of the disabled is troubling and reflects a policy and custom of deliberate indifference."  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190) at 9.)  In considering a motion for summary judgment, a trial court can only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Plaintiffs' exhibit 4 purports to be an extract from the deposition of Green.  However, this exhibit is not properly authenticated in that it fails to include the reporter's certification indicating that the deposition is accurate.  *Id*. at 774 ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent.").  Because Plaintiffs have not properly authenticated the document labeled as exhibit 4, the court cannot consider this document in ruling on the motion for summary

18

1  judgment.

2          Even if the court could consider exhibit 4, the court finds that it fails to establish a genuine

3  issue of material fact.  Plaintiffs are correct that Green was the recipient of an April, 2003, email

4  that contained allegations of abuse.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.'

5  Entitlement of Compensatory Damages (# 190), Dep. of Charlene Green, Ex. 4 at 32:19-24.)

6  However, Green testified that she "probably didn't do anything because [she] had an assistant

7  superintendent for special education handle[] all of that."  *Id*. at 33:8-10.  Plaintiffs have presented

8  no evidence indicating that it would have been improper for Green to have the assistant

9  superintendent for special education handle problems relating to potential abuse.  Therefore, there

10  is no evidence that either CCSD or the Board failed to act appropriately in response to the April,

11  2003, email.  Furthermore, Plaintiffs have failed to establish how Green's knowledge that reports of

12  abuse are not filed timely shows that harm to a federally protected right is substantially likely.

13          Plaintiffs next point to the deposition testimony of Compliance and Monitoring Officer

14  Michael Harley.  According to Plaintiffs, Harley is responsible for investigating complaints of non-

15  compliance but failed to conduct a proper investigation with regard to Preschooler.  Although

16  Plaintiffs are correct that the Compliance and Monitoring Office is responsible for investigating

17  complaints, (Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 168),

18  Dep. of Michael Harley, Ex. 4 at 11:17-19), Plaintiffs have provided no citation to the record to

19  support claims that Harley failed to ensure proper witnesses were interviewed.  *See* (Pls.' Opp'n to

20  Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190) at 10.)

21  Plaintiffs further fail to cite to the record to support their claim that "it is undisputed that CCSD

22  had actual notice of Preschooler's federally protected rights being violated in April of 2003."  *See*

23  *id*.  Assertions contained in a party's points and authorities that are not supported by the record are

24  insufficient to create a genuine issue of material fact.  *Reese*, 208 F.3d at 737.

25          Plaintiffs also argue that a purported April 4, 2003, Aversive Intervention Incident Report

26

19

1   shows that corporal punishment occurred and required administrative intervention.  The report

2   referred to by Plaintiffs describes the incident that occurred in March, 2003, where LiSanti

3   allegedly caused Preschooler to hit himself.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.'

4   Entitlement of Compensatory Damages (# 190), Aversive Intervention Incident Report, Ex. 5.)

5   Plaintiffs argue that Harley acted with deliberate indifference by concealing and preventing the

6   appropriate prosecution and investigation of this matter.  However, Plaintiffs have once again failed

7   to provide any evidence to support this factual assertion.

8          Plaintiff's exhibit 6 is an unauthenticated document from Maureen Powers that was

9   allegedly sent to Harley, among others.  The document describes the March, 2003, incident and

10  states that the writer had seen other incidents involving different children in the classroom.  (Pls.'

11  Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190), April

12  3, 2003, Message, Ex. 6.)  However, absent proper authentication, or other evidence indicating that

13  the email was sent or that Harley actually received the document, Plaintiff's exhibit 6 is insufficient

14  to show Harley had actual knowledge it was likely Preschooler's rights would be violated .

15         Plaintiffs next argue that the testimony of Special Education Administrative Specialist Kay

16  Davis as a whole was an example of deliberate indifference.  Specifically, Plaintiffs argue as

17  follows: "Why Ms. Davis was not notified of the abuse allegations commencing in September of

18  2002 or her failure to admit to the knowledge, is troubling and is evidence of either a systemic

19  cover-up or a failure to disclose and remediate upon such knowledge particularly when she is

20  delegated to provide 'technical assistance' to the KIDS program."  (Pls.' Opp'n to Defs.' Mot. for

21  Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190), April 3, 2003, Message, Ex.

22  6.)  Although Plaintiffs are correct that Davis did not recall receiving reports of abuse, (Pls.' Opp'n

23  to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190), Dep. of Kay

24  Davis, Ex. 8 at 25:20-23.), such evidence does not establish that CCSD or the Board had

25  knowledge that Preschooler's rights would be violated.  Moreover, the purported excerpt of Davis's

26

deposition testimony is inadmissible because Plaintiffs did not properly authenticate the document by providing the reporter certification.  *Orr*, 285 F.3d at 774.

Next, Plaintiffs cite to a Statement Report where Powers purportedly describes the March, 2003, incident along with other acts of abuse committed against children.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190), Statement Report, Ex. 6.)  The statement further indicates that LiSanti stated, "I hate those kids, I hate those kids with autism."  *Id*.  Even assuming Plaintiffs had properly authenticated this document, the statement report fails to show deliberate indifference.  First, the statement report is dated April 3, 2003.  *Id*. According to Plaintiffs' Amended Complaint, Preschooler was removed from Betsy Rhodes on April 7, 2003.  (Am. Compl. ¶ 116.)  Plaintiffs have provided no evidence of any alleged ADA or RA violation between April 3, 2003, and April 7, 2003.  Moreover, there is no evidence that CCSD or the Board failed to act in the four days following the Statement Report before Preschooler withdrew from Betsy Rhodes.  In short, a Statement Report that occurred after the alleged violations of the ADA and RA occurred cannot show deliberate indifference to Preschooler's rights.[7]

Finally, Plaintiffs argue that deliberate indifference is shown because, prior to 2002, principal Wyatt had no experience with autistic children.  Plaintiffs further argue that Wyatt had implied knowledge that LiSanti's teaching should be scrutinized.  The court, however, fails to see how Wyatt's lack of experience amounts to deliberate indifference in the light of previous testimony indicating that Wyatt received training with respect to autistic children.  Similarly, Plaintiffs have not cited any authority or fact that would indicate Wyatt had implied knowledge that LiSanti's teaching posed a harm to Preschooler's ADA and RA rights.  Kathy DeSario's[8]

---

[7]There are no factual allegations indicating that any violations of the ADA or RA occurred any time after April 3, 2003.

[8]Plaintiff's points and authorities describe Kathy DeSario as someone who "observed" LiSanti.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190) at 12.)

deposition testimony described LiSanti as a "fake," "not a good teacher," a "gambler," and "depressed." (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 190), Dep. of Kathy DeSario, Ex. 10 at 58:10 -59:18.) However, there is no evidence that Kathy DeSario ever communicated her opinion of LiSanti to Wyatt or any other school officials.

In summary, the court has carefully reviewed all the evidence presented in this case. As discussed above, none of the evidence offered by Plaintiffs indicates or suggests that CCSD or the Board had any knowledge that a harm to Preschooler's federally protected rights was substantially likely or that they failed to act upon that likelihood. Looking at the evidence in the light most favorable to Plaintiffs, the court finds that Plaintiffs have failed to create a genuine issue of material fact with respect to deliberate indifference. Plaintiffs' consistent mischaracterizations of evidence combined with their inability to cite to the record is insufficient to defeat a motion for summary judgment.

### 4. Monell/Canton

Plaintiff's fourth cause of action is entitled "Monell/Canton" and is brought against the Board and CCSD. The court has previously construed this claim as a § 1983 action for failure to train. (December 16, 2004, Order (# 79) at 5.) CCSD and the Board are seeking summary judgment as to this cause of action arguing that no policy of CCSD or the Board was the moving force behind the alleged injury. CCSD and the Board further argue that Plaintiffs cannot establish deliberate indifference. In opposition, Plaintiffs argue that "[t]he custom and policy of defendant's failure to properly investigate, prosecute, report and correct corporal punishment, resulting in the known violations of federally protected rights, equated deliberate indifference and created a system of unreasonable conduct." (Pls.' Opp'n to Defs.' Mot. for Summ. J. as to Pls.' Fourth Claim for Relief (# 183) at 16.)

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct

complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). A local government may be sued under section 1983 when an injury is inflicted as a result of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. . . ." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). One way a plaintiff may demonstrate municipal liability for a constitutional violation is by showing that the violation occurred as a result of inadequate training on the part of the municipality. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). In order to establish a claim under § 1983 due to inadequate training, the Plaintiffs must provide evidence from which a reasonable jury could find that there was an inadequate training program, and that the Defendant was deliberately indifferent to whether its officers received adequate training. There must also be actual causation between the inadequate training and the deprivation of the plaintiff's rights. *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

As a preliminary matter, Defendants argue that Plaintiffs have failed to assert the violation of a constitutional or federal right. (Defs.' Mot. for Summ. J. on Pls.' Fourth Claim for Relief (# 166) at 6.) The court has carefully examined the various pleadings filed in this case and agrees with Defendants assessment. Plaintiffs have not identified any federal or constitutional right that allegedly forms the basis of their fourth cause of action. Therefore, the court finds that summary judgment is appropriate because Plaintiffs have failed to show a violation of a federal constitutional or statutory right. *See Wood*, 879 F.2d at 587.

Even assuming that Plaintiffs had identified the violation of a constitutional or federal right, Plaintiffs have failed to create a genuine issue of material fact with respect to the adequacy of training provided by CCSD and the Board. The evidence presented with respect to this claim is largely identical to the evidence previously discussed in part II(B)(3) above. In fact, Plaintiffs'

discussion of the evidence in opposition to summary judgment is virtually identical to the

discussion contained in their points and authorities opposing summary judgment as to

compensatory damages under their second claim for relief.  *Compare* (Pls.' Opp'n to Defs.' Mot.

for Summ. J. as to Pls.' Fourth Claim for Relief (# 183) at 8-13) *with* (Pls.' Opp'n to Defs.' Mot.

for Summ. J. as to Pls.' Entitlement of Compensatory Damages (# 184) at 8-13.)

As discussed in part II(B)(3) above, the court finds that Defendants have met their burden of

showing that there are no genuine issues of material fact.  Defendants have presented ample

evidence showing that they provide training to school personnel on how to educate children with

autism.  Furthermore, the court finds that Plaintiffs have failed to present evidence showing that

there is, in fact, a genuine issue of material fact.  Plaintiffs have presented no evidence showing that

CCSD or the Board failed to adequately train school employees or that CCSD or the Board had any

knowledge of a substantial likelihood that Preschooler's federal rights would be violated.  In

addition, there is no evidence showing that the alleged inadequate training caused any deprivation

of Preschooler's rights.  Because Plaintiffs have failed to allege a violation of federal or

constitutional rights and because they have failed to create a genuine issue of material fact with

respect to the adequacy of training provided by CCSD and the Board, summary judgment will be

granted.

**III.  Motion to Dismiss**

**A.  Legal Standard**

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken

as true and construed in a light most favorable to the non-moving party."  *Wyler Summit P'Ship v.*

*Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, a court

does not necessarily assume the truth of legal conclusions merely because they are cast in the form

of factual allegations in a plaintiff's complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d

752, 754-55 (9th Cir. 1994).

There is a strong presumption against dismissing an action for failure to state a claim.  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

**B.  Discussion**

Cravish and LiSanti have filed a Motion to partially dismiss Plaintiffs' fifth cause of action to the extent it raises a negligence claim arising from the alleged use of aversive intervention.[9]  In opposing the motion, Plaintiffs argue that they can sustain a cause of action, pursuant to the Fourteenth Amendment to the United States Constitution, for the alleged excessive corporal punishment of Preschooler.  Although the court expresses serious doubt as to whether Plaintiffs' Fifth Cause of Action initially raised a claim for the violation of Preschooler's substantive due process rights,[10] the court will nevertheless construe Plaintiffs' Amended Complaint as raising such a claim.

"The vast majority of Circuits have concluded that substantive due process principles

---

[9]In part II(B)(2) above, the court determined that the reporting statutes, Nev. Rev. Stat. §§ 388.521, 432B.010, could serve as a duty standard in a negligence claim.  However, the court ultimately determined that summary judgment is appropriate as Plaintiffs have failed to create a genuine issue of material fact with respect to actual causation.

[10]Plaintiffs' Fifth Cause of Action is titled, "Assault, Battery and the Use of Aversive Interventions." Paragraph 157 of the Amended Complaint states, "Plaintiffs allege that the actions of both LiSanti and Cravish . . . constituted assault, battery and aversive interventions contrary to N.R.S. § 388.521 *et. seq.* and a violation of the Fourth Amendment to the United States Constitution."  (Am. Compl. ¶ 157.)  However, Plaintiffs' Fifth Cause of Action is devoid of any reference to the Fourteenth Amendment or substantive due process. *See* (Am. Compl. ¶¶ 156-160.)  Nevertheless, the court will give Plaintiffs the benefit of the doubt and analyze this claim as encompassing a cause of action for excessive corporal punishment in violation of the Fourteenth Amendment.

25

established by the Supreme Court protect a student from corporal punishment that is intentional, obviously excessive, and creates a foreseeable risk of serious injury." *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1070 (11th Cir. 2000).  In fact, the Ninth Circuit has explicitly recognized a student's right to be free from the excessive use of force.  *P.B. v. Koch*, 96 F.3d 1298, 1303 (9th Cir. 1996).  "In determining whether substantive due process rights have been violated, we will look to such factors as the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm."  *Kock*, 96 F.3d at 1304 (citing *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1409 (9th Cir. 1989), *overruled in part by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996)).

In the specific context of school corporal punishment cases, courts look to "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."  *Garcia v. Miera*, 817 F.2d 650, 655 (10th Cir. 1987); *see also Neal*, 229 F.3d at 1075 ("[A]t a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury.")

In the case at bar, the court finds that Plaintiffs have sufficiently raised a claim for a violation of Preschooler's substantive due process rights.  Plaintiffs have alleged that "Defendant Cravish violently grabbed Plaintiff Preschooler, twisted his right arm, causing his body to flex in a painful manner, lifting him from his stationary sitting position then violently throwing him approximately two and a half (2 ½) feet towards the wall."  (Am. Compl. ¶ 83.)  Plaintiffs further alleged that LiSanti assaulted and battered "Preschooler by grabbing both wrists, and violently and forcefully causing him to repeatedly strike himself about the face and head approximately ten (10)

26

1    to twelve (12) times." *Id.* ¶ 100.  Construing these allegations in the light most favorable to

2    Plaintiffs, the court cannot say that no reasonable fact finder could find a violation of Preschooler

3    substantive due process rights.  Although the facts in this case are marginal, it is possible that

4    Plaintiffs can show Cravish and LiSanti acted with malice and applied a disproportionate amount of

5    force that caused a severe injury to Preschooler.  Because Plaintiffs have properly alleged a

6    violation of Preschooler's Fourteenth Amendment rights, Cravish and LiSanti's motion to dismiss

7    will be denied.

8    **IV.  Motion for Judgment on the Record**

9          In addition to the Federal and state claims, Plaintiffs seek judicial review of an

10   administrative hearing officer's decision concerning the appropriate educational placement of

11   Preschooler under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et*

12   *seq*.  At issue in this motion is whether Plaintiffs should be allow to supplement the administrative

13   record with additional evidence.  Defendants argue that this case should be decided on the basis of

14   the administrative record because no good cause exists for supplementing the record and because

15   Plaintiffs have not sought leave to supplement the record.  In opposition, Plaintiffs argue that they

16   have expressed a desire to supplement the record and that supplementation is appropriate because

17   the administrative record does not contain all relevant evidence.

18         The purpose of IDEA is "to ensure that all children with disabilities have available to them

19   a free appropriate public education that emphasizes special education and related services designed

20   to meet their unique needs and prepare them for further education, employment, and independent

21   living."  20 U.S.C. § 1400(d).  The individualized education program ("IEP") is the primary vehicle

22   for implementing the goals of IDEA.  *Honig v. Doe*, 484 U.S. 305, 311 (1988).  The IEP, prepared

23   at meetings between the school district, teachers and parents, "sets out the child's present

24   educational performance, establishes annual and short-term objectives for improvements in that

25   performance, and describes the specially designed instruction and services that will enable the child

26

to meet those objectives." *Id.*

In case of a dispute, IDEA permits the parents of disabled children to "present complaints . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). The statute provides that a parent who submits such a complaint "shall have an opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). IDEA further permits any party aggrieved by the finding and decision in the due process hearing to file a civil action in state or federal court. 20 U.S.C. § 1415(i)(2). In any action seeking judicial review of the administrative decision, "the court . . . (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(C).

The Ninth Circuit has construed the word "additional" contained in 20 U.S.C. § 1415(i)(2)(C)(ii) to mean supplemental. *Ojai Unified Sch. District v. Jackson*, 4 F.3d 1467, 1472-73 (9th Cir. 1993). Therefore, section 1415(i)(2)(C)(ii) "does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony." Reasons for supplementing the record "might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id*. at 1473. In determining what constitutes "additional" evidence, the court "must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." *Id*. The party requesting to supplement the record must provide a solid justification for admitting the additional evidence. *E.S. v. Indep. Sch. Dist., No. 196 Rosemount-Apple Valley*, 135 F.3d 566, 569 (8th Cir. 1998); *Brandon H. ex rel. Richard H. v. Kennewick Sch. Dist. No. 17*, 82 F.Supp.2d 1174 (E.D. Wash. 2000).

Plaintiffs first seek to supplement the record with the deposition testimony of substitute teacher Stuart Limbert.  As discussed previously, Limbert's deposition testimony reveals that Cravish lifted Preschooler by the arm on more than one occasion.  (Pls.' Opp'n to Defs.' Mot. for J. on the Record (# 187), Dep. of Stuart Limbert, Ex. 3 at 18:23-19:12.)  Plaintiffs argue that such evidence is relevant because the hearing officer was concerned about a lack of corroborating evidence.  Because the whereabouts of Limbert were unknown at the time of the administrative hearing, the court will permit Plaintiffs to supplement the record with Limbert's deposition testimony.

Plaintiffs next argue that the Hearing Officer improperly excluded all evidence regarding Defendants' compliance with the state and school district's reporting regulations regarding aversive interventions.  Plaintiffs argue that such evidence is "critical" because it is evidence of improper interventions.  The court finds that Plaintiffs have failed to meet their burden of demonstrating how Defendants' compliance or noncompliance with state and school district reporting regulations demonstrates a denial of a free appropriate public education.  As such, the court will not permit Plaintiffs to supplement the record with such evidence.  However, Plaintiffs may supplement the record with any reports describing the use of aversive interventions on Preschooler, including the Maureen Powers electronic mail, and any police reports that contain descriptions of the alleged abuse.  Plaintiffs' asserted violations of the IDEA include the alleged improper treatment of Preschooler.  Therefore, this evidence, which was not available during the administrative hearing, may be relevant to determining whether Preschooler was, in fact, denied a free appropriate public education.[11]  Because it appears that potentially relevant evidence was not available at the time of the administrative hearing, the court will permit Plaintiffs to supplement the record as set forth

---

[11]The court notes that the State Review Officer opined that Plaintiffs failed to establish how any of the alleged events at issue in this case interfered with Preschooler's free appropriate public education. (Defs.' Mot. for J. on the Pleadings (# 163), Decision of State Review Officer, Ex. B at 42.)  At this time, the court expresses no opinion as to whether such evidence can show an interference with Preschooler's free appropriate public education.

1    above.  Therefore, Defendants motion for judgment on the administrative record will be denied.

2          As the review of an administrative hearing officer's decision is generally accomplished

3    without any proceedings in the nature of a trial, Plaintiffs shall have thirty (30) days from the date

4    of this order in which to file points and authorities regarding the claim for judicial review.

5    Defendants shall then have fifteen (15) days in which to file an opposition, and Plaintiffs will

6    subsequently have seven (7) days to file a reply.

7    **V. Motions in Limine**

8          In addition to the various dispositive motions discussed above, Defendants have filed four

9    separate motions in limine.  The court will address each separate motion in turn.

10         **A.  The Testimony of Jan Crandy**

11         Defendants' first motion in limine seeks to preclude the testimony of Jan Crandy

12   ("Crandy") as an expert witness.  According to Defendants, Crandy has been identified as a person

13   who participated in Preschooler's IEP process.[12]  In opposition to this motion, Plaintiffs state that

14   they have previously informed Defendants that Crandy will not testify as an expert witness.

15   Because Defendants are not going to call Crandy as an expert witness, the court will deny

16   Defendants' motion as moot.

17         **B.  The Testimony of Certain Witnesses**

18         Defendants' second motion in limine seeks to exclude the testimony of eleven witnesses:

19   (1) Penny Clark; (2) the parents of Missie Doe; (3) Chele Steelsmith; (4) Kristi Marlor; (5) John

20   Leis; (6) Terry Phelps; (7) Sandra Williams; (8) Pam Knobel; (9) Nora Escobedo; (10) Carolyn

21   Rangen; and (11) Jeannette Napolean.  According to Defendants, these witnesses are primarily the

22   disgruntled parents of children enrolled at other elementary schools in the Clark County School

23   district.  Defendants seek to preclude the testimony of these witnesses on the basis of four separate

24

25         [12]Defendants acknowledge that Crandy may testify as to her personal knowledge regarding her

26   experiences in the IEP meetings for Preschooler.

arguments: (1) several of the witnesses were not disclosed until the same day as the discovery

deadline; (2) Plaintiffs failed to provide sufficient contact information so that Defendants could

locate them; (3) the testimony is irrelevant to the disputed issues in this case; and (4) the testimony

creates a danger of unfair prejudice that outweighs the probative value of such testimony.

In opposition to Defendants' motion, Plaintiffs assert two primary arguments.  First,

Plaintiffs argue that the testimony of each witness "is relevant to show that CCSD has a custom and

practice in the failure to train, report, investigate, correct and remediate child abuse and aversive

intervention; particularly, in regard to nonverbal, disabled children."  (Pls.' Opp'n to Defs.' Mot. in

Limine to Preclude the Testimony of Certain Witnesses (# 178) at 6, 7, 7, 9, 10.)  In addition,

Plaintiffs assert that the testimony of some of these witnesses is relevant to show "deliberate

indifference by policymakers who are aware that it is substantially likely that federally protected

rights are being violated."  *Id*. at 6, 7, 8, and 9.

In light of the court's rulings in part II above, the proffered testimony of the above-named

witnesses is not relevant to any of the remaining issues in this case.  The issues of deliberate

indifference along with custom and policy are no longer before the court.  Plaintiffs have not

identified any other issues to which these particular witnesses would testify.  Therefore,

Defendants' motion in limine will be granted.

### C.  The Testimony of Stanton Smith

Defendants next seek to preclude Dr. Stanton Smith ("Smith") from testifying as to his

diagnosis that Preschooler suffers from post-traumatic stress disorder ("PTSD").  Defendants argue

that this testimony should be precluded because  Smith's conclusions are not based on reliable

methodology.  In opposition, Plaintiffs argue that PTSD is a viable diagnosis in autistic children

and that Defendants objections go to the weight of the evidence as opposed to its admissibility.

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert

testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the

product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). This process requires the court to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592.

Factors to consider in making the *Daubert* inquiry include: (1) whether a theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error involved in a specific scientific technique; and (4) general acceptance. *Id.* at 592-594. However, it is important to keep in mind that "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Id*. at 595. The ultimate focus of the inquiry must be solely on the principles and methodology rather than the conclusions that such techniques generate. *Id*. at 595.

In this case, Smith, in making his forensic psychiatric assessment, chose to "concentrate on observable signs of increased aggression (be it outward aggression or self abuse behavior) and regression in previous skills obtained such as loss of language ability or social competence." (Defs.' Mot. in Limine to Exclude Expert Testimony of Stanton Smith (# 162), Forensic Psychiatric Assessment, Ex. 2 at 2.) In choosing this criteria, Smith stated that "[t]here is growing evidence that the DSM-IV-TR [[Diagnostic and Statistical Manual of Mental Disorders, 4th edition]] criteria is not adequate to diagnose PTSD in young children." *Id*. As support for this proposition, Smith refers to criteria developed by Michael Scheeringa ("Scheeringa") to diagnose children in Preschooler's age group. *Id*.

In seeking to exclude this evidence, Defendants argue that Smith's choice to focus on

increased aggression and regression in previous skills is not supported by Scheeringa's work.

Defendants point out that Smith failed to follow up on Scheeringa's subsequent work where

Scheeringa modified his proposal for a revision of the DSM-IV.  Furthermore, Defendants, after

reviewing the criteria contained in the DSM-IV for diagnosing PTSD along with Scheeringa's

proposed modifications, argue that Smith failed to assert that Preschooler evidences sufficient

symptoms for a diagnosis of PTSD.

In the case at bar, the court has examined the relevant evidence and concludes that Smith's

testimony is not based upon reliable methodology.  Although it is undisputed that non-verbal

autistic children can be diagnosed with PTSD, Smith has only diagnosed two autistic children,

Preschooler and a child that is a party to similar litigation, with PTSD, (Defs.' Mot. in Limine to

Exclude Expert Testimony of Stanton Smith (# 162), Dep. of Stanton J. Smith, M.D., Ex. 1 at

188:11-12).  In making that diagnosis, Smith did not rely on either the DSM or the published work

of Scheeringa. There is no evidence in the record indicating that Smith's choice to focus on

increased aggression and regression is based on accepted medical practice.  In fact, Plaintiffs have

provided no authority indicating that Smith relied on generally accepted diagnostic criteria in

diagnosing Preschooler with PTSD.  For these reasons, Defendants' motion to exclude Smith's

testimony will be granted.

**D.  The Testimony of Stephen C. Luce, Ph.D.**

Defendants final motion in limine seek to preclude Stephen C. Luce, Ph.D. ("Luce") from

testifying as an expert in this action.  Defendants argue that Plaintiffs have failed to meet the

requirements of supplementing the administrative record pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii).

In opposition to Defendants' motion, Plaintiffs state that Luce should be permitted to consider

evidence that was not part of the administrative record.  According to Plaintiffs, "Luce's testimony

is relevant at trial to remaining causes of action because Plaintiffs' seek legal relief."  (Pls.' Opp'n

to Defs.' Mot. in Limine to Preclude the Testimony of Luce (# 185) at 6.)

1    Following the administrative process in this case, Luce rendered two separate written

2    opinions as an expert.  On August 31, 2004, Luce, in his first written opinion, addressed the

3    appropriateness of the procedures used for teaching children with autism in the Betsy Rhodes

4    Elementary School KIDS classroom and the appropriateness of Preschooler's IEP.  In his second

5    written opinion, Luce opined that a "shadow aide" should accompany Preschooler "to classroom

6    and other educational events presently and for the full duration of the Defendants' responsibility

7    under the IDEA, i.e., until age 22."  (Defs.' Mot. in Limine to Preclude the Testimony of Luce (#

8    164), January 21, 2005, Opinion of Luce, Ex. E.)

9    As discussed in part IV above, 20 U.S.C. § 1415(i)(2)(C)(ii) allows a party seeking judicial

10   review of an administrative decision to supplement the record in certain circumstances.  However,

11   the court must be careful not to allow additional evidence to transform the proceeding into a trial *de

12   novo*.  *Ojai Unified Sch. District*, 4 F.3d at 1473.  The party requesting to supplement the record

13   has the burden of providing a solid justification for admitting the additional evidence.  *Indep. Sch.

14   Dist., No. 196 Rosemount-Apple Valley*, 135 F.3d at 569.

15   The court finds that Plaintiffs have failed to present a solid justification for admitting the

16   testimony of Luce as additional evidence.  *See id.*  In *Ojai Unified Sch. District*, the Ninth Circuit

17   set forth several possible reasons for supplementing the administrative record.  4 F.3d at 1473.

18   These reasons "might include gaps in the administrative transcript owing to mechanical failure,

19   unavailability of a witness, an improper exclusion of evidence by the administrative agency, and

20   evidence concerning relevant events occurring subsequent to the administrative hearing."  *Id*. at

21   1473.  Here, Plaintiffs have not demonstrated that Luce was previously unavailable to testify or that

22   his testimony was improperly excluded.  Furthermore, there is no indication that Luce's testimony

23   concerns relevant events that occurred subsequent to the administrative hearing or that his

24   testimony will be used to fill a gap in the administrative record that was caused by mechanical

25   failure.  In fact, other than stating that Luce should be permitted to consider evidence that was

26
                                                    34

improperly excluded, Plaintiffs have provided no justification for admitting this evidence.  To the extent that Luce's testimony is relevant to Plaintiffs' case, such testimony should have been presented at the administrative hearing.  Admitting Luce's testimony at this time would obscure this court's role in reviewing the administrative record.   For these reasons, the court will grant Defendants' motion in limine.

IT IS THEREFORE ORDERED that Defendants CCSD, Peggie Cravish and Kathleen LiSanti's Motion for Summary Judgment on Plaintiffs' Fifth and Sixth Claims for Relief (# 161) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants CCSD, Peggie Cravish and Kathleen LiSanti's Motion for Summary Judgment on Plaintiffs' Seventh Claim for Relief (# 167) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiffs' Entitlement to Compensatory Damages under Plaintiffs' Second Claim for relief (# 168) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on Plaintiffs' Fourth Claim for Relief (# 166) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants Peggie Cravish and Kathleen LiSanti's Motion to Partially Dismiss Plaintiffs' Fifth Cause of Action (# 165) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Judgment on the Record on Plaintiffs' First Claim for Relief (# 163) is hereby DENIED.  Plaintiffs will be permitted to supplement the administrative record as set forth above.  The court notes that judicial review of administrative action rarely requires any proceedings in the nature of a trial.  Therefore, Plaintiffs shall have thirty (30) days from the date of this order in which to file points and authorities in support of their petition for judicial review.  Defendants shall then have fifteen (15) days in which to file an opposition, and Plaintiffs shall then have seven (7) days to file a reply.

1    IT IS FURTHER ORDERED that Defendants' Motion in Limine to Preclude Jan Crandy

2  from Testifying in the Capacity of an Expert Witness (# 159) is hereby DENIED as moot.

3    IT IS FURTHER ORDERED that Defendants' Motion in Limine to Preclude the Testimony

4  of Certain Witnesses Disclosed by Plaintiffs (# 160) is hereby GRANTED.

5    IT IS FURTHER ORDERED that Defendants Motion in Limine to Exclude Expert

6  Testimony of Stanton Smith (# 162) is hereby GRANTED.

7    IT IS FURTHER ORDERED that Defendants' Motion in Limine to Preclude the Testimony

8  of Stephen C. Luce, Ph.D. (# 164) is hereby GRANTED.

9    IT IS SO ORDERED.

10    DATED this 7th day of September, 2006.

11

12

13                                          _____
                                          LARRY R. HICKS
                                          UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26